# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## Washington, DC

## UNITED STATES

### v.

## Paul S. BRANTNER
### Electronics Technician Second Class, U.S. Coast Guard

## CGCMG 0142

## Docket No. 1103

## 12 December 2000

General Court-Martial convened by Commander, Maintenance & Logistics Command Atlantic. Tried at Norfolk, Virginia on January 6-7, 1998.

| | |
|---|---|
| Military Judge: | CAPT Robert Bruce, USCG |
| Trial Counsel: | LCDR Lee A. Handford, USCG |
| Detailed Defense Counsel | LT Martin L. White, JAGC, USNR |
| Appellate Defense Counsel: | CDR Robert E. Korroch, USCG |
| Appellate Government Counsel: | LTJG Michael Cavallaro, USCGR |

**BEFORE**
**PANEL TWO**
**BAUM, KANTOR & McCLELLAND,**
Appellate Military Judges

McCLELLAND, Judge:

Appellant was tried by a general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of 12 specifications of violating a lawful general order by using a government computer to download sexually explicit images from the Internet in violation of Article 92, Uniform Code of Military Justice (UCMJ), and 8 specifications of violating 18 U.S.C. § 2252(a)(2) by knowingly receiving child pornography in interstate commerce in violation of Article 134, UCMJ. The court sentenced Appellant to be reduced to E-1, to forfeit all pay and allowances, to be confined for two years and to be separated from the Coast Guard with a dishonorable discharge.

In accordance with the pretrial agreement, the convening authority approved the reduction to E-1, the confinement and the forfeitures, but suspended reduction below E-3 and the forfeitures for six months and suspended confinement in excess of ten months for twelve months.[1] The convening authority also mitigated the dishonorable discharge to a bad-conduct discharge, which he approved.

---

[1] The pretrial agreement only required suspension of confinement in excess of twelve months.

The facts, as revealed in a stipulation of fact and in the providence inquiry, are as follows. Appellant was assigned to USCGC RED BIRCH (WLM 687). Among other duties, Appellant was responsible for maintaining the cutter's Internet web page. He was given access to and custody of the ship's laptop computer, on which he loaded software licensed to him by Erol's Internet Services, so that he could work on the ship's Internet web page. In order to access the software on the computer, Appellant used his personal password, which he had registered with Erol's, and all his excursions on the Internet used his Erol's software. Over a period of approximately three and a half months, Appellant's Internet visits included browsing pornographic Internet web sites and engaging in Internet Relay Chat (IRC) or "chat room" activities where he actively sought and exchanged pornographic images, sometimes posing as a teenage girl in order to obtain pornographic images of children and minors. In all, Appellant downloaded to the hard drive of the ship's computer 812 pornographic image files, 42 of which contained images of persons under the age of eighteen engaged in sexually explicit conduct.

Before this Court, Appellant has assigned four errors. Three of the assignments contend that his pleas of guilty of Article 92 were improvident, because (1) the regulation he was charged with violating is vague; (2) the record does not establish that the regulation is a lawful general order; (3) the constitutionality of the regulation was not satisfactorily resolved. The fourth assignment is that the pleas of guilty of Article 134 were improvident because the record does not establish scienter. We reject the assignments and affirm.

## I. Vagueness

Appellant contends that the pleas of guilty to the specifications under Charge I, alleging violations of a lawful general order, were improvident because the regulation (order) was unconstitutionally vague.

The part of the regulation identified in the specifications as having been violated reads as follows:

> Standard. An employee has a duty to protect and conserve Government property and shall not use such property, or allow its use, for other than authorized purposes.

This text is followed in the regulation by the following definitions (emphasis added) and examples:

> **Government property includes any form of** real or **personal property in which the Government has an ownership**, leasehold, or other property **interest** as well as any right or other intangible interest that is purchased with Government funds, including the services of contractor personnel. **The term includes** office supplies, **telephone and other telecommunications equipment and services**, the Government mails, **automated data processing capabilities**, printing and reproduction facilities, Government records, and Government vehicles.

> **Authorized purposes are** those purposes for which Government property is made

available to members of the public or **those purposes authorized in accordance with law or regulation**.

Example 1: Under regulations of the General Services Administration at 41 CFR 201-21.601, an employee may make a personal long distance call charged to her personal calling card.

Example 2: An employee of the Commodity Futures Trading Commission whose office computer gives him access to a commercial service providing information for investors may not use that service for personal investment research.

Example 3: In accordance with chapter 252 of the Federal Personnel Manual, an attorney employed by the Department of Justice may be permitted to use her office word processor and agency photocopy equipment to prepare a paper to be presented at a conference sponsored by a professional association of which she is a member.

Appellant claims that the regulation is vague because it fails to adequately define "use" and "authorized purposes." His argument appears to be premised on the notion that the examples affect the meaning of the regulation. We do not read them that way. The examples are just that, examples. Examples 1 and 3 are examples where a personal use of government property has been pre-authorized by a regulation – apart from the instant regulation. This alerts the reader that the reader's proposed use, too, may be authorized by some regulation. Such examples in no way render the basic regulation vague. A person who uses government property for a personal purpose without first obtaining individual authorization or ensuring that a regulation exists authorizing that use does so at his or her peril.

Appellant also complains that the examples fail to fully explain their rationale, suggesting that the approval of the use in example 1 or disapproval in example 2 may be somehow related to the effect of the use on the government equipment. Appellant's confusion really amounts to incredulity that it could really be unlawful to apply government property to personal use when the effect on the government property is minimal.[2] Indeed, it is hard to imagine a person being prosecuted for making a telephone call that does not incur direct expense to the government. However, that reality of prosecutorial discretion does not negate or render vague a clear, simple regulation that government property is not to be put to unauthorized use.

Stripped of its distractions, Appellant's vagueness argument boils down to a complaint that the regulation fails to address his particular situation within its text. The regulation speaks in generalities. This is not the same as being vague. What is authorized can be determined with reasonable certainty, in some cases by reference elsewhere, in other cases by common sense. Common sense says that activities directly relating to official duties are authorized. Activities not relating to official duties are authorized if another regulation or authority so provides. Corollary to the principle "Ignorance of the law is no excuse" is the idea that one may be required to do some research to determine the boundaries of lawful activity. If those boundaries

---

[2] The type and frequency of use in this case is not minimal, whether or not it significantly affected the government property.

can be determined with reasonable certainty, the regulation is not vague.

In *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294 (1972), the Supreme Court approved an antinoise ordinance that was attacked for vagueness. The ordinance provided:

> [N]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof.

The Court set forth certain guideposts. "[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298-2299. The Court commented, "The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' [citation omitted] but we think it is clear what the ordinance as a whole prohibits." *Grayned*, 408 U.S. at 110, 92 S.Ct. at 2300. A second guidepost was expressed thus. "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108-109, 92 S.Ct. at 2299. The Court held, "As always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible. The Rockford City Council has made the basic policy choices, and has given fair warning as to what is prohibited. '[T]he ordinance defines boundaries sufficiently distinct' for citizens, policemen, juries, and appellate judges. [Footnote omitted] It is not impermissibly vague." *Grayned*, 408 U.S. at 114, 92 S.Ct. at 2302.[3]

The *Grayned* analysis included consideration of State court construction of the term "tends to disturb" which might otherwise have infected the ordinance with impermissible vagueness. Even taking that into account, it is clear to us that the regulation at issue in this case is less vague than the ordinance in *Grayned*.

*U.S. v. Brooks*, 20 U.S.C.M.A. 28, 42 C.M.R 220 (1970), is instructive for our case. In that case, an Air Force regulation on the same subject as the one in our case was attacked for vagueness. The Air Force regulation provided as follows:

> Use of Government Facilities, Property, and Manpower. Air Force personnel will not directly or indirectly use, or allow the use of, Government property of any kind, including property leased to the Government, for other than officially approved activities. Government facilities, property, and manpower, such as stenographic and typing assistance, mimeograph and chauffeur services, may be used only for official

---

[3] The third guidepost in *Grayned*, "[W]here a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' [Footnotes omitted]," we judge to be inapposite. Notwithstanding Appellant's third assignment of error, we do not perceive any First Amendment right involved in, or abutting, Appellant's use of government property.

Government business. Air Force personnel have a positive duty to protect and conserve Government property, including equipment, supplies, and other property entrusted to them. This paragraph is not intended to preclude the use of Government facilities for activities which would further military-community relations provided they do not interfere with military missions.

The *Brooks* court, affirming on this issue, quoted with approval the following excerpt from the court below:

The defense contend the words 'officially approved activities' and 'official Government business' are undefined, thereby making the paragraph too vague and uncertain to be enforceable as a penal statute. We do not agree.

A statute will not be declared void for vagueness and uncertainty where the meaning thereof may be implied, or where it employs words in common use, or words commonly understood, or a technical or other special meaning well enough known to enable persons within the reach of the statute to apply them correctly, or an unmistakable significance in which they are employed. 30 Am Jur, Statutes, sec 473. In this case we find that the words involved are words of common usage and understanding, and have a meaning well enough known to those within the reach of the regulation to apply them correctly. The phrases are commonly used throughout the service, and clearly imply that the activities or business referred to must not be of a personal nature, but must be of a type sanctioned by competent authority, law, regulation or custom. [Citations]

*U.S. v. Brooks*, *supra*, 42 C.M.R. at 223.

The Air Force regulation in *Brooks* differs from the one in the instant case in being repetitive, and includes a final sentence that weakens its certainty. Otherwise, its essence is the same: "Air Force personnel will not … use, or allow the use of, Government property … for other than officially approved activities." We find *Brooks* controlling for our case, and reject the first assignment of error.

Before leaving this subject, we will address one other assertion. Appellant claims that Trial Counsel's presentencing argument implied that some uses of Government equipment might be authorized under the regulation when he said Appellant's offense "is not about checking game scores, downloading a movie review, [or] taking a virtual trip of your next vacation." This claim takes the argument out of its presentencing context. Trial Counsel began with the question, "What kind of an offense is this?" He contrasted the acts Appellant committed with less reprehensible acts that, although prohibited, might have warranted punishment that could be imposed below the level of a general court-martial. He did not indicate in any way that such less reprehensible acts would have been authorized.

## II. Charged regulation as punitive general order

Appellant contends that the regulation he was charged with violating was not a lawful

general order.  Under Charge I, he was charged with twelve specifications in the following form:

> In that Electronics Technician Second Class Paul Stephen Brantner, U.S. Coast Guard, on active duty and assigned to USCGC RED BIRCH (WLM 687), did, onboard USCGC RED BIRCH (WLM 687), on or about [date], **violate a lawful general order, to wit, section 2635.704(a) of the Office of Government Ethics Standards of Ethical Conduct, as set forth in Enclosure (3) to Commandant Instruction M5370.8A dated 30 August 1993**, by wrongfully using a Coast Guard computer, government property, for other than official purposes, to wit: using said computer to access, view, download, transfer, modify and store computer files containing images depicting nudes, erotica, and sexually explicit conduct.

The whole of Commandant Instruction M5370.8A, Subject: Standards of Conduct, does not purport to be punitive.  The directive comprises a Letter of Promulgation signed by the Commandant (a person who may issue general orders and regulations within the meaning of Article 92), three chapters,[4] and seven enclosures.  In Chapter 1, there appears a section

> B. <u>APPLICABILITY</u>.  The Office of Government Ethics Standards of Ethical Conduct are hereby incorporated by reference into this Manual, and all Coast Guard personnel are ordered to obey the provisions thereunder as set forth in Enclosure (3).  Coast Guard personnel includes [among others, all active duty military members].  For Coast Guard military personnel and PHS and DOD uniformed personnel assigned to the Coast Guard, this order constitutes a lawful general order within the meaning of Article 92, Uniform Code of Military Justice, and paragraph 16 of Part IV to the Manual for Courts-Martial, United States, 1984.  Coast Guard military members, and PHS and DOD uniformed personnel assigned to the Coast Guard, who violate any of the Office of Government Ethics Standards of Ethical Conduct provisions of this instruction are subject to prosecution under the UCMJ.

Appellant first asserts that the Office of Government Ethics Regulations (OGE Regulations), issued under the authority of the Director, Office of Government Ethics, are not a lawful general order.  We agree that the OGE Regulations, standing alone, are not a lawful general order.

Appellant goes on to contend that the attempt to make the OGE Regulations punitive by incorporation in a Commandant Instruction (COMDTINST) fails because it fails to distinguish advisory guidance from mandatory direction.  He also asserts a distinction between the COMDTINST and the OGE Regulations and claims that the record is ambiguous about which regulation Appellant violated.

Appellant seems to argue that since the COMDTINST promulgates, with but a single signature, several different kinds of materials – policy, advisory, descriptive, prescriptive – no

---

[4] To cite an obviously nonpunitive portion, one of the chapters, titled "Ethics Training," sets forth policy and procedures concerning ethics training.

part of it can be a punitive general regulation.[5]  In support of this argument, Appellant mentions, almost in passing, the holding of *U.S. v. Hogsett*, 8 U.S.C.M.A.681, 25 C.M.R.185, 189 (1958): "A regulation which combines advisory instructions with other instructions which contain a specific penalty for noncompliance is not intended as a general order or regulation within the meaning of Article 92 of the Uniform Code."  He does not mention the holding of *U.S. v. Brooks*, *supra*, 42 C.M.R. at 222: "A regulation which combines advice with command is not thereby excluded from the class of regulations which make persons subject to its terms liable to punishment under Article 92[.]"  The facts of *Hogsett* are easily distinguishable from our case, as the regulation at issue there was not just included along with advisory provisions, but was itself found merely advisory.  As *Brooks* suggests, we have not discovered in the case law any generalized rule against combining advisory and mandatory provisions in the same document. Instead, where such a combination exists, a provision claimed by the government to be mandatory and punitive must give adequate notice that violation of its mandatory provisions is punishable conduct.  *U.S. v. Brooks, supra,* 42 C.M.R. at 222 ("A regulation … may so indiscriminately combine precept and pedagogics as not to provide fair notice of its penal nature to those subject to its terms."); *U.S.  v. McEnany*, 19 U.S.C.M.A. 556, 42 C.M.R. 158, 160 (1970), *citing U.S. v. Benway*, 19 U.S.C.M.A. 345, 41 C.M.R. 345, 348 (1970); *accord, U.S. v. Blanchard*, 19 M.J. 196 (CMA 1985).

Appellant also asserts that the record is ambiguous about which regulation Appellant violated.  It is true that the specifications can be read to identify the OGE regulation as the lawful general order.  Although the wording used in the specifications, and the consistent words of the stipulation of fact and the providence inquiry, are open to that interpretation, we think they clearly comprehend the general order contained in the COMDTINST and its incorporation of the OGE Regulation's provisions.  Further, we see that incorporation as successful in creating a punitive regulation that includes within its terms the words of Section 2635.704(a).  Appellant appears to concede that some such incorporation is possible, as he points to the Department of Defense Joint Ethics Regulations as a contrasting model.  We need not parse the language of the specifications; it suffices that they clearly identify the COMDTINST that is the general order, and the specific provision violated.

As discussed in Part I, *supra*, *U.S. v. Brooks* concerns a regulation that is in substance much like the one at issue here.  About the advisory/mandatory issue, the *Brooks* court quoted with approval the lower court's words:

> [W]e find that the provisions … which were violated by the accused are not advisory or instructional, as argued by the defense, but a direct prohibition of the activities set out. . . .
>
> Accordingly, we find that the portions of [the regulation at issue] pertinent to our determination of the issues involved are not mere guides setting out instructions or advice, but rather are mandatory provisions enforceable as a penal statute.

*U.S. v. Brooks*, *supra*, 42 C.M.R. at 223.  Likewise, we have no trouble finding that section

---

[5] Such an argument was rejected in *U.S. v. Kennedy*, 11 M.J. 669 (CGCMR 1981), where an article of Coast Guard Regulations (CG-300) was at issue.

2635.704(a) of the Office of Government Ethics Standards of Ethical Conduct, as set forth in Enclosure (3) to Commandant Instruction M5370.8A dated 30 August 1993, is clearly a mandatory and punitive provision.

Even if we were in doubt about the status of this regulation, Appellant's admissions during the providence inquiry are sufficient to put this issue to rest in a guilty plea case. Appellant admitted that the COMDTINST, which is dated 30 August 1993, was signed by Admiral Kime and became effective on 30 August 1993. We may take judicial notice that Admiral Kime was, at that time, the Commandant of the Coast Guard, a flag officer in command, and therefore, per the Manual for Courts-Martial, ¶16.c.(1)(a), had the power to issue general orders and regulations within the meaning of Article 92.[6] He further admitted that Admiral Kime was authorized to issue it, that it was a proper regulation for Admiral Kime to issue, that it was properly published, and that it was a lawful general order or regulation that he was required to follow and had a duty to obey. R54-55. We see no reason to reopen the issue now. *U.S. v. Ballard*, 39 M.J. 1028 (CGCMR 1994).

## III. Constitutionality

Appellant contends that the regulation was unconstitutionally enforced in this case in a manner that inhibits freedoms guaranteed by the First Amendment, and that the military judge failed to inquire into this constitutional issue. His argument appears to rely, at least initially, on the vagueness argument, Assignment I, which we have rejected. Beyond vagueness, he complains that "the Government was fixated on the content of the Appellant's Internet excursions." He further complains, "Constitutionally protected material is treated the same as unprotected material." He seems to contrast the general pornography of Charge I and the child pornography of Charge II, holding up the former as constitutionally protected material while conceding that the latter is unprotected.

As we noted in footnote 3, *supra*, we do not perceive any First Amendment Right implicated in Appellant's use of government property. In our view, adult pornography has the same constitutional protections as movies and newspapers, but not more. There is no more need to scrutinize the constitutionality of the enforcement in this case than there would be in a theft case involving pornographic materials or newspapers.

It is not surprising that the Government focused on the nature of the materials that Appellant downloaded. These materials plainly and unquestionably had nothing to do with government business. Materials of another sort might well escape notice, or at least prosecution at a general court-martial. We see no reason to question this focus by the Government.

## IV. "*Scienter*" under 18 U.S.C. §2252(a)(2)

Appellant contends that the plea of guilty to Charge II, charging appellant with receiving visual depictions produced by means involving use of a minor engaging in sexually explicit conduct, "was improvident because the record is insufficient to support proof of the scienter element of 18 U.S.C. §2252(a)(2)." He then cites *U.S. v. Maxwell*, 45 M.J. 406 (1996), for the

---

[6] This provision of the Manual for Courts-Martial has not changed since 1994.

proposition that the record must contain actual evidence that the actors were minors, and makes much of the fact that copies of the images involved in the offenses were not included in the record even though the pretrial agreement contains a provision for a stipulation of fact that would include photocopies of the images.[7]

*U.S. v. Maxwell*, 45 M.J. 406 (1996), was a contested case. Here, we have a guilty plea. Evidence of the elements of an offense is not required for a guilty plea. As to the elements, what is required is for the accused to admit each element, or to indicate that he believes each element is true.[8] *U.S. v. Chambers*, 12 M.J. 443 (CMA 1982); *U.S. v. Davenport*, 9 M.J. 364 (CMA 1980); R.C.M. 910(e), Discussion. Indeed, in a guilty plea, evidence of an element would be unavailing if the accused did not admit the element. *Ibid.*

*Maxwell*, *supra*, holds that the elements of 18 U.S.C. §2252(a)(2) include both that the subjects of the depiction at issue were minors and that appellant believed they were minors. *U.S. v. Maxwell*, 45 M.J. at 424. In the context of a guilty plea, where an accused must admit both of these facts, the first fact is covered if he believes at the time of trial that the subjects were minors, and the second is covered if he believed at the time of the offense that they were minors. In our case, Appellant admitted to both such beliefs for each of the specifications of Charge II.

As to the factual basis for the pleas, Appellant stated that he believed the persons depicted were minors, saying, "Just from looking at the pictures it's obvious they were minors." He also described the chat room encounters that led him to expect that the images he was receiving would be of minors, and he described the images, e.g. "[It] depicts a pre-teen or an elementary girl engaged in oral/genital intercourse with a man, sir." R. at 108. This is certainly adequate to establish a factual basis even without copies of the images in the record.

It is true that if the record elsewhere contradicted the facts admitted by Appellant, this discrepancy would be fatal if not resolved. *U.S. v. McGowan*, 41 M.J. 406 (1995); *U.S. v. Smith*, 34 M.J. 319 (CMA 1992); *U.S. v. Johnson*, 1 M.J. 36 (CMA 1975); R.C.M. 910(h)(2). Appellant has not pointed to any such contradiction in this record, and we find none.

## Conclusion

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, we have determined that the findings are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings and sentence, as approved below, are affirmed.

Judge KANTOR concurs.

---

[7] Although Appellant uses the term "*scienter*" to describe the element he claims is missing, the element that the actors were in fact minors is separate from the *scienter* element that the accused knew or believed that the actors were minors.

[8] The accused must also respond to the military judge's inquiry so as to "satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e).

BAUM, Chief Judge (concurring)

I concur with Judge McClelland in all but her treatment of the vagueness issue. In my view, the order in the specifications under Charge I is unconstitutionally vague. I am led to this conclusion by the quoted guideposts from *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294 (1971), which Judge McClelland has set out in her opinion. Were it not for *U.S. v. Brooks*, 20 USCMA 28, 42 CMR 220 (1970), I would find the regulation in question unenforceable as a punitive general order. Such a holding would not preclude us from affirming lesser included offenses that rest on Appellant's use of a Government computer to view and download pornographic images. Appellant clearly knew that his actions were inconsistent with military obligations. As such, those actions amount to dereliction of duty, and we would be justified in affirming that lesser included offense under Article 92, UCMJ. *U. S. v. Sapp*, 53 M.J. 90 (2000), *U.S. v. Bivins*, 49 M.J. 328 (1998).

The problem with the order in this case is not as apparent as it might be under a different set of facts, since every Coast Guard member should know intuitively, without an explicit order, that Government computers are not to be used for viewing pornography. A conclusion like that is less clear with acts that have both a personal and a governmental aspect. In those instances, must individuals be required to search for an outside source of precise authority before using assigned Government property, or risk criminal action? Without an order providing better guidance for the unwary, I believe it would be unreasonable to hold a person criminally responsible for an act that has an indirect but arguably related government function. From my perspective, the order in question does not tell a Coast Guard member what he or she may legally do or not do with government property, when it simply says: "An employee has a duty to protect and conserve government property and shall not use such property, or allow its use, for other than authorized purposes." Furthermore, I do not discern any meaningful guidance as to what may or may not be an authorized purpose from the following definition that is included with the order: "Authorized purposes are those purposes for which Government property is made available to members of the public or those purposes authorized in accordance with law or regulation."

The U.S. Supreme Court has said in *Grayned v. City of Rockford, supra,* that: "[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2298-2299. I do not believe the order before this Court can pass this test, particularly when we look at the second *Grayned* guidepost quoted by Judge McClelland: "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108-109, 92 S.Ct. at 2299.

If the order here is a valid punitive regulation, it would seem to follow that a similarly worded regulation should suffice as a punitive order in the area of interpersonal military relationships. In that event, the punitive directive and detailed guidance on the subject in Chapter 8.H of the Coast Guard's Personnel Manual (COMDTINST M10006.A) could be

10

replaced with the following simple order: **All Coast Guard personnel have a duty to adhere to positive professional and personal relationships and shall not engage in other than authorized interpersonal relationships with each other**. As I see it, such an order and the one before this Court provide no guidance to the personnel who are expected to obey them. Moreover, they also fail to provide standards for those who apply them and, thus, impermissibly delegate to those persons basic policy decisions on an *ad hoc* and subjective basis.

In light of the foregoing, I would find the order concerning use of Government property to be void for vagueness were it not for the determination by the then U.S. Court of Military Appeals in *U.S. v. Brooks*, supra, that a similar Air Force directive constituted a lawful order. Notwithstanding my views of the effect of the subsequent Supreme Court decision in *Grayned*, we are bound to follow the holding of our highest military court until such time as its outlook on this subject changes. *U.S. v. Kelly*, 45 M.J. 259 (1996). Accordingly, I concur that all findings of guilty and the approved sentence should be affirmed.



For the Court


James P. Magner
Clerk of the Court