# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

## UNITED STATES

### v.

### David E. LABEAN
### Fireman (E-3), U.S. Coast Guard

### CGCMG 0162

### Docket No. 1139

### 7 November 2001

General Court-Martial convened by Commander, First Coast Guard District.  Tried at First Coast Guard District, Boston, Massachusetts, on 12 and 13 June 2000.

| | |
|---|---|
| Military Judge: | CAPT Robert W. Bruce, USCG |
| Trial Counsel: | LCDR Elisa P. Holland, USCG |
| Assistant Trial Counsel: | LT Richard T. Schachner, USCG |
| Detailed Defense Counsel: | LT John P. Casey, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LT(jg) Mark A. Cunningham, USCGR |
| | LT Daniel J. Goettle, USCG |

## BEFORE
## PANEL EIGHT
## BAUM, CASSELS, AND PALMER
Appellate Military Judges

CASSELS, Judge:

Appellant was tried by a general court-martial composed of a military judge alone. Following his pleas of guilty, entered under a pretrial agreement, he was convicted of three specifications of violating a lawful general order, in violation of Article 92 of the Uniform Code of Military Justice (UCMJ), and 25 specifications of wrongfully and knowingly receiving visual depictions that had been transported interstate by computer of minors engaged in sexually explicit conduct, an act made criminal by 18 U.S.C. § 2252(a)(2), in violation of Article 134 of the UCMJ. Appellant was sentenced to a reduction to pay grade E-1, confinement for ten months, forfeiture of all pay and allowances, and a bad-conduct discharge.  In accordance with the pretrial agreement, the convening authority reduced the length of confinement to six months, and approved the sentence as changed.

Before this Court, Appellant has assigned two errors: that he was subjected to an

unreasonable multiplication of charges; and that his plea of guilty to violating a lawful general order was improvident because the general order involved is unconstitutionally vague. We reject both assignments and affirm. This Court, in *United States v. Brantner*, 54 M.J. 595 (C.G.Ct.Crim.App. 2000), accurately resolved Appellant's second assignment of error, which will not be further discussed in this opinion. Our opinion, below, addresses Appellant's first assignment. We acknowledge that the principle of unreasonable multiplication of charges is a useful check on abuses of prosecutorial discretion in the military justice system, but we hold that it has no application in this case where each of the specifications arises from Appellant's separate and distinct acts, where the statute violated is not based on a UCMJ offense but a civilian statute, and where the unit of prosecution employed is consistent with that used in civilian prosecutions and upheld by federal appellate courts.

Background

At the time of the offenses, Fireman (FN) LaBean was stationed at the Coast Guard Aids-to-Navigation Team in Bristol, Rhode Island. In 1999, the Team received its complement of internet-capable computers. FN LaBean was issued an account and a password that enabled him to access the internet. The Article 92 convictions result from FN LaBean's use of the computer for unauthorized purposes in violation of the Commandant of the Coast Guard's directive regarding employees' standards of conduct, Commandant Instruction M5370.8A (Aug. 30, 1993). On 21 February 2000, FN LaBean used this access to view dozens of images depicting minors who were engaged in sexually explicit conduct – child pornography. The Article 134 convictions stem from his violation of the federal sexual exploitation of children statute, 18 U.S.C. § 2252, by receiving 25 such images that day through the internet.

Unreasonable Multiplication of Charges

Appellant argues that the 25 specifications under Charge II, to which he entered unconditional guilty pleas and of which he was convicted, subjected him to an unreasonable multiplication of charges. Each of the 25 specifications contained an allegation in the following language, where the symbol # is a numerical digit or character:

> Specification XX: In that [Appellant] . . . did . . . on or about 21 February 2000, wrongfully and knowingly receive one (1) visual depiction, specifically described as:
> "ks##-##.jpg"
> that had been transported in interstate commerce by any means, including by computer, the production of which visual depictions involved the use of a minor engaging in sexually explicit conduct and which visual depictions were of such conduct, in violation of 18 United States Code, Section 2252(a)(2).

These 25 allegations stem from Appellant's activity on one day – 21 February 2000 – during one session using one website which contained a list of file names. Clicking on a file name opened a pornographic image that Appellant viewed on the computer's monitor. After viewing the image, he closed that image by clicking the mouse again, and clicked on another file name to open and view it. R. Vol. 1 at 93-95. Some of the 25 files named in the 25 specifications under Charge II were opened and viewed *seriatim*. All were opened and viewed within a period of about

18 minutes.  R. Vol. 2 at 126-31; R. at Def. Ex. A and B for Ident.; Def. Br. at 2.

Appellant contends that these 25 specifications constitute an unreasonable multiplication of charges – a prosecutorial abuse that is frowned upon in the Discussion section accompanying Rule for Courts-Martial (RCM) 307(c)(4).  Appellant does not here contend that any of these specifications are multiplicious, and we therefore do not address that issue, except to note in passing the distinction between the two concepts.  Multiplicity, a concept grounded in double jeopardy, is designed to prevent multiple convictions and punishments under different statutes for the same act or course of conduct, when that result is contrary to Congressional intent.  *United States v. Teters*, 37 M.J. 370 (CMA 1993), *cert. denied sub nom. Toro v. United States*, 510 U.S. 1091 (1994); *United States v. Sidebottom*, 54 M.J. 928 (C.G.Ct.Crim.App. 2001).  Unreasonable multiplication of charges, on the other hand, is a principle designed to serve as a limitation on prosecutors' discretion in formulating charges against an accused.  *United States v. Quiroz*, 55 M.J. 334 (2001).  Offenses that are not multiplicious may nevertheless be unreasonably multiplied under this principle – and that is Appellant's contention in this case.

The Court of Appeals for Armed Forces, in its recent opinion in *Quiroz*, approved the Navy-Marine Corps Court of Military Appeals' use of the principle[1] of unreasonable multiplication of charges to provide sentence relief.  *Id.*  It approved, with slight modification, our sister service Court's framework for analyzing charges to determine if a given multiplication of charges arising from the same act or transaction, while permissible under *Teters*, is nevertheless unreasonable.  *Id.* at 339; *see United States v. Quiroz*, 53 M.J. 600, 607 (N.M.Ct.Crim.App. 2000).  That framework, as modified by our higher Court, is to consider the following five factors:

> (1) "Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?"; (2) "Is each charge and specification aimed at distinctly separate criminal acts?"; (3) "Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?"; (4) "Does the number of charges and specifications *unfairly* increase the appellant's punitive exposure?"; and (5) "Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?" . . .  "After considering these factors, if we find the 'piling on' of charges so extreme or unreasonable as to necessitate the invocation of our Article 66(c), UCMJ, authority, we will determine that appropriate remedy on a case by case basis."

> *Quiroz*, 55 M.J. at 338-39 (emphasis in original).

The *Quiroz* opinion traces the history of unreasonable multiplication of charges in military law, citing William Winthrop: "An unnecessary multiplication of forms of charge for the same offense is always to be avoided." 55 M.J. at 337 (citing William Winthrop, *Military Law and Precedents* 143 (2d ed. 1920)).  Also cited is the 1928 edition of the Manual for Courts-Martial: "One transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person." *Id.* (citing Manual for Courts-Martial: U.S. Army (1928)).  This principle is now in the discussion accompanying RCM 307(c)(4), Manual for Courts-Martial (MCM), in these words: "What is substantially one transaction should

---

[1] The *Quiroz* opinion refers to unreasonable multiplication of charges as a principle, prohibition, concept, and doctrine.  We will use the term principle.

not be made the basis for an unreasonable multiplication of charges against one person." Our higher Court observed in *Quiroz* that the principle, although relegated to a non-binding portion of the Manual, is still an effective limitation on prosecutorial discretion. Appellant in his Assignment of Errors urges application of the *Quiroz* analysis, which, he contends, leads to the conclusion that the 25 specifications under Charge II could serve as "a suitable example of unreasonable multiplication of charges in the discussion section of R.C.M. 307(c)(4) for the next edition of the M.C.M." Appellant Br. at 3.

We disagree. The principle of unreasonable multiplication of charges, recognized by our higher Court in *Quiroz*, does not apply to these 25 specifications. This principle applies where multiple charges arise from "what is substantially one transaction." In this case the 25 specifications under Charge II are generated from 25 separate acts. For example, in *Quiroz*, the principle of unreasonable multiplication of charges was applied to one act (sale of C-4 explosive), which had been charged under two criminal statutes (Article 108, UCMJ, and 18 U.S.C. § 842). Our review of decisions of other Courts of Criminal Appeals shows that application of this principle of unreasonable multiplication of charges is generally limited to the situation where a single act gives rise to multiple charges. *See United States v. Oliver*, 2001 CCA LEXIS 247 (N.M.Ct.Crim.App. Sept. 13, 2001) (charge of presenting false claim for lodging expenses and charge of using altered hotel receipt which was attached to that claim for lodging expenses not unreasonable multiplication of charges); *United States v. Coatney*, 2001 CCA LEXIS 113 (N.M.Ct.Crim.App. Apr. 10, 2001) (indecent liberties with two children simultaneously, in one act of exposure, charged as two specifications, one for each child victim, not unreasonable multiplication of charges; sodomy with child, and indecent liberties with second child who observed same act of sodomy, charged as two specifications, one for each child victim, not unreasonable multiplication of charges); *United States v. Rinkes*, 53 M.J. 741 (N.M.Ct.Crim.App. 2000) (single act of indecent exposure observed by child and adult charged as two specifications – indecent liberties with child and indecent exposure to adult – not unreasonable multiplication of charges). Where, as in the instant case, the specifications each allege a distinct act (receiving a different image) in repeated violation of one statute, 18 U.S.C. § 2252(a)(2), service Courts of Criminal Appeals have held the principle of unreasonable multiplication of charges to be inapplicable, or have professed to apply the principle but found the offenses to be "discrete." *United States v. Deloso*, 2001 CCA LEXIS 228 (A.F.Ct.Crim.App. Sept. 6, 2001) (Court need not assess reasonableness of multiple charges of marijuana use that do not arise out of substantially one transaction); *United States v. Teffeau*, 2001 CCA LEXIS 246 (N.M.Ct.Crim.App. Sept. 28, 2001) (same false statement repeated five different times, some of which were repeated to same people, examined under *Quiroz* factors, and found to be "discrete" offenses chargeable separately).

Implicit in Appellant's argument is an assertion that no matter how many pornographic images Appellant received and viewed, all of those viewings must be lumped together and considered "substantially one transaction" and charged as such, because the individual viewings were brief, and all occurred during an 18-minute portion of a single computer on-line session. We do not find this argument persuasive. Our higher Court has recognized that criminal statutes that are "discrete-act" offenses,[2] as indicated by the statutory language, permit separate convictions for

---

[2] The Court of Appeals for the Armed Forces has distinguished between "discrete-act" offenses and "continuous-course-of-conduct" offenses. *United States v. Neblock*, 45 M.J. 191, 197 (1996).

each discrete act violation. *United States v. Neblock*, 45 M.J. 191 (1996). The criminal statute involved in this case, in using the term "any visual depiction," clearly indicates that it is a "distinct-act" offense, and that each act of receipt was intended by Congress to be charged and punished as a separate violation of the statute. 18 U.S.C. § 2252 provides:

> (a) Any person who –
>
> (1) knowingly transports or ships . . . any visual depiction . . .
> (2) knowingly receives, or distributes, *any visual depiction* that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, if –
> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> (B) such visual depiction is of such conduct;
>
> shall be punished as provided in subsection (b) of this section.
>
> (b)(1) Whoever violates . . . paragraphs (1) [or] (2) . . . of subsection (a) shall be fined under this title or imprisoned not more than 15 years, or both . . . .

18 U.S.C. § 2252 (emphasis added).

In *Ebeling v. Morgan*, 237 U.S. 625 (1915), a case cited in *Neblock*, *supra*, the Supreme Court held that similar language in Section 189 of the Federal Criminal Code ("Whoever shall . . . cut . . . *any mail bag* . . . .") evidenced Congressional intent that each violation be charged as a separate offense. The defendant had cut open six mail bags. He was convicted of six counts of violating Section 189, a separate count for each cutting offense. He received as punishment a fine of $500 and confinement for three years for each count. The periods of confinement were ordered to run consecutively, except for one of the counts which would run concurrently – making the cumulative punishment $3,000 and 15 years confinement. After serving three years of confinement, the defendant applied for a writ of *habeas corpus*. The Supreme Court analyzed the language of the criminal statute as follows:

> This case raises the question whether one who, in the same transaction, tears or cuts successively mail bags of the United States used in conveyance of the mails, with intent to rob or steal any such mail, is guilty of a single offense or of additional offenses because of each successive cutting with the criminal intent charged. If the successive cuttings into the different bags constitute different offenses, then the court below was right in refusing the writ of *habeas corpus*. If but a single offense was committed, notwithstanding separate mail bags were successively cut with the felonious intent named in the statute, then the appellant was entitled to the writ, and should have been discharged by order of the court upon the proceedings below.

Section 189, under which this indictment was prosecuted, provides:

"Whoever shall tear, cut, or otherwise injure any mail bag, pouch, or other thing used or designed for use in the conveyance of the mail, or shall draw or break any staple or loosen any part of any lock, chain, or strap attached thereto, with intent to rob or steal any such mail, or to render the same insecure, shall be fined not more than five hundred dollars, or imprisoned not more than three years, or both."

*Reading the statute with a view to ascertaining its meaning, it is apparent that it undertakes to make an offender of anyone who shall cut, tear, or otherwise injure any mail bag, or* who shall draw or break any staple or loosen any part of any lock, chain or strap attached thereto, *with the felonious intent denounced by the statute. These words plainly indicate that it was the intention of the lawmakers to protect each and every mail bag from felonious injury and mutilation. Whenever any one mail bag is thus torn, cut or injured, the offense is complete. Although the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged.* The offense as to each separate bag was complete when that bag was cut, irrespective of any attack upon, or mutilation of, any other bag. The words are so plain as to require little discussion or further amplification to ascertain their meaning. The separate counts each charged by its distinctive number the separate bag and each time one of them was cut there was, as we have said, a separate offense committed against the statute. Congress evidently intended to protect the mail in each sack, and to make an attack thereon in the manner described a distinct and separate offense.

*Neblock*, 45 M.J. at 196-97 (emphasis in original) (citing *Ebeling*, 237 U.S. at 628-29).

Because in this case Congress has clearly indicated the intended unit of prosecution for violations of 18 U.S.C. § 2252(a)(2) – i.e. each receipt of pornographic material – that intent governs how violations of the statute are charged.

A careful reading of *Quiroz* reveals that the rationale for the principle of unreasonable multiplication of charges, founded on the peculiarities of military law and military procedure, is not applicable in this case. *Quiroz* instructs that the principle exists to address the increased potential for prosecutorial overreaching in the military justice system. That rationale is inapposite here where the 25 offenses, although charged under Article 134, UCMJ,[3] arise from civilian law, not military law; and where the Government used the same unit of prosecution for these offenses that civilian jurisdictions use. Our higher Court described the rationale for the principle of unreasonable multiplication of charges as follows:

[T]he prohibition against unreasonable multiplication of charges *addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion.* For example, the military justice system has a long-standing preference for trying all known offenses at a single trial, which is different from the preference in the civilian sector for separate trials for each offense. Similarly, the existence of broadly

---

[3] Appellant was convicted under Article 134, UCMJ, (clause 3 – crimes and offenses not capital) of violating 18 U.S.C. § 2252(a)(2).

worded offenses unknown in civilian society also increases the potential for overreaching.

In short, even if offenses are not multiplicious as a matter of law with respect to double jeopardy concerns, the prohibition against unreasonable multiplication of charges has long provided courts-martial and reviewing authorities with a traditional legal standard – reasonableness – *to address the consequences of an abuse of prosecutorial discretion in the context of the unique aspects of the military justice system.*

55 M.J. at 337-38 (citations omitted) (emphasis added).

In the instant case, the offense arises not from military law, but from a Federal criminal statute, 18 U.S.C. § 2252(a)(2). This statute, the pertinent text of which is set forth above, is very specific and detailed. Thus the risk of "broadly worded offenses unknown in civilian society" is absent. Furthermore we are convinced that the discrete acts charged in these 25 specifications would be charged as separate counts in the civilian justice system. *See Ebeling*, *supra*. In *United States v. Matthews*, the defendant was charged in a federal district court with multiple violations of 18 U.S.C. § 2252(a)(1), a provision which contains the "any visual depiction" language virtually identical to § 2252(a)(2), *supra*. 11 F. Supp. 2d 656 (D. Md. 1998), *aff'd*, 209 F.3d 338 (4th Cir. 2000), *cert. denied*, 531 U.S. 910 (2000). The District Court found that the defendant who transmitted two graphic files as email attachments within less than a minute of each other could be charged with a separate count for each transmission. The court stated:

> When a person attaches child pornography to an email message and sends it through the phone wire, that person has just transported child pornography. If the person decides to send another message a minute later and attaches another picture, that is a separate act of transportation, regardless of the brief interval of time between transmissions and regardless of whether the transmissions are part of a single "conversation."

11 F. Supp. 2d at 659. *See also United States v. Gallardo*, 915 F.2d 149 (5th Cir. 1990), *cert. denied*, 498 U.S. 1038 (1991) (affirming sentence of consecutive six-year terms of imprisonment per violation for simultaneously placing three letters in the mail that contained pornographic photographs, constituting three separate violations of 18 U.S.C. § 2252(a)(1)).

The Court of Appeals for the Seventh Circuit recently addressed the separateness of violations of this statute in terms of the victim. *United States v. Sherman*, 2001 U.S. App. LEXIS 21708 (7th Cir. Oct. 11, 2001). There, the defendant was convicted of three counts, alleging receiving, transmitting and possessing child pornography (each count dealt with different pornographic material). The defendant argued that the three counts should be grouped together under sentencing guidelines, because all three counts involved the same victim – i.e., society. The defendant claimed that although the exploited children were the primary victims of the production of the pornographic materials, "he was merely a passive viewer who caused no additional harm to the children involved." *Id.* at *6. The Court disagreed, holding that the children depicted were the primary victims of the offenses in all three counts:

> The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual

7

interest in avoiding the disclosure of personal matters . . . . Children also suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse secret. Indeed, one of the reasons for criminalizing the "mere" possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted . . . . Because the children depicted in the pornography suffer a direct and primary emotional harm when another person possesses, receives or distributes the material, we join the six circuits that have concluded that these counts should not be grouped under [the provision of the sentencing guidelines]. Although society at large is also a victim of these crimes, the primary, identifiable victim is the child portrayed, who must live with the knowledge that adults like [Appellant] can pull out a picture or watch a video that has recorded the abuse of that child at any time.

*Id.* at *21, *22, *24 (citations omitted).

One of the opinions cited with approval by the Seventh Circuit Court involved two counts of receiving child pornography, where each count dealt with different photographs received on different days, in violation of 18 U.S.C. § 2252(a)(2). *United States v. Rugh*, 968 F.2d 750 (8th Cir. 1992). That decision held that the primary victim was the exploited child, and since the photographs depicted different children, grouping of the two counts for sentencing purposes was not appropriate. The Court noted that the sentencing range under the guidelines for the two ungrouped counts was 15 to 21 months. If the two counts were grouped under the guidelines as urged by the defendant, the sentencing range would have dropped to 10 to 16 months. 968 F.2d at 755.

Although Appellant has formulated his argument in terms of the *Quiroz* analysis, an analysis we find does not apply to this case, we address the thrust of Appellant's argument – i.e., that the cumulative maximum period of confinement was unreasonably long. The President has established the maximum punishment for Article 134 offenses under the United States Code:

An offense not listed in Part IV and not included in or closely related to any offense listed therein is punishable as authorized by the United Sates Code, or as authorized by the custom of the service. When the United States Code provides for confinement of a specified period or not more than a specified period the maximum punishment by court-martial shall include confinement for that period.

RCM 1003(c)(1)(B)(ii), MCM (2000 ed.).

The maximum confinement imposable for violation of 18 U.S.C. § 2252(a)(2) is 15 years for a first offense. 18 U.S.C. § 2252(b). Thus the maximum punishment prescribed by Congress for the convictions under Charge II is extremely high – 375 years if the offenses are alleged in separate specifications. In this case, imposition of 375 years of confinement would have been excessive and inappropriate, and would have triggered relief from this Court under Article 66(c), but it was the accurate maximum punishment for the specifications under Charge II as prescribed by RCM 1003(c)(1)(B)(ii). In fact, imposition in this case of even 15 years of confinement (the maximum punishment for a single consolidated offense as suggested by Appellant) would have been excessive. We believe the principle of unreasonable multiplication of charges is a useful tool

to limit the discretion of the military prosecutor who multiplies charges from a single criminal transaction. But it is not an appropriate tool for the trial judge or this Court to use simply to reduce a prescribed maximum punishment to a level the trial judge or this Court deems reasonable.

We are mindful of the Discussion accompanying RCM 1003(c)(1), which provides that "if there was a unity of time and the existence of a connected chain of events, the offenses may not be separately punishable, depending on all the circumstances, even if each required proof of a different element." This provision is cited by our higher Court in support of their holding in *Quiroz*, 55 M.J. at 347, and by this Court in our opinion in *Sidebottom*. 54 M.J. at 930-31. In our view, this text from the Manual for Courts-Martial supports the existence of the principle of unreasonable multiplication of charges, but does not alter our opinion that that principle does not apply to these 25 specifications.

Even if the military judge erred in not consolidating the 25 specifications of Charge II, and even if we found Appellant had not waived the issue through his failure to object at trial and his unconditional guilty pleas, we are convinced that Appellant was not materially prejudiced by the error in view of the short term of confinement (ten months) awarded by the military judge and the reduction of confinement to six months in accordance with the pretrial agreement.

Conclusion

We have reviewed the record in accordance with Article 66, UCMJ. We determine that the findings and sentence are correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings and sentence, as approved below, are affirmed.

PALMER, Judge, concurs.

BAUM, Chief Judge, concurring:

I write separately only to restate the view expressed in my concurring opinion in *United States v. Brantner*, 54 M.J. 595, 603-04 (C.G.Ct.Crim.App. 2000), that, were it not for *United States v. Brooks*, 20 USCMA 28, 42 CMR 220 (1970), I would find the order violated by Appellant void for vagueness.

For the Court,



Kevin G. Ansley
Clerk of the Court