# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Brian E. MARCHAND
## Electronics Technician Second Class (E-5), U.S. Coast Guard

## CGCMG 0149

## Docket No.  1112

## 5 December 2001

General Court-Martial convened by Commander, Maintenance and Logistics Command Atlantic. Tried at Maintenance and Logistics Command Atlantic, Norfolk, Virginia, from 19 through 21 October 1998.

| | |
|---|---|
| Military Judge: | CAPT Robert W. Bruce, USCG |
| Trial Counsel: | CDR Gary E. Felicetti, USCG |
| Detailed Defense Counsel: | LT Joseph Boveri, JAGC, USNR |
| Appellate Defense Counsel: | LT Sandra K. Selman, USCG |
| | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | CDR Chris P. Reilly, USCG |
| | LT Sandra J. Miracle, USCGR |

## BEFORE
## PANEL ONE
## BAUM, KANTOR, & CASSELS
Appellate Military Judges

CASSELS, Judge:

Appellant was tried by a general court-martial composed of a military judge alone. Under a pretrial agreement, he pled guilty and was convicted of the following offenses: twenty-two specifications of violating a lawful general order by using a Coast Guard computer to access, view, download, transfer, modify, and store computer files that contained images depicting nudes, erotica, and sexually explicit conduct (Charge I); and six specifications of wrongfully and knowingly receiving visual depictions that had been transported interstate by computer of minors engaged in sexually explicit conduct, an act made criminal by 18 U.S.C. § 2252(a)(2) (Charge II); in violation of Articles 92 and 134 of the Uniform Code of Military Justice (UCMJ).

After finding that none of the charges or specifications were multiplicious for sentencing, the military judge sentenced Appellant to a reduction to pay grade E-3, confinement for ten

months, and a bad conduct discharge. The trial judge recommended that Appellant's confinement in excess of four months be suspended conditioned upon Appellant's successful completion of a treatment program for paraphilia after release from the brig. Relevant provisions of the pretrial agreement required the convening authority to suspend Appellant's confinement in excess of five months for a period of twelve months from the date sentence was adjudged. It also required that automatic forfeitures of $1,728.30 be deferred from the date that sentence was adjudged until the date of the convening authority's action, and then be waived for a period of six months in favor of Appellant's wife. In a post-trial session on 14 January 1999, the pretrial agreement was changed to suspend all confinement in excess of the time served, two months and fifteen days, for twelve months from the date that sentence was adjudged. The convening authority approved the sentence as adjudged but suspended all confinement in excess of two months and fifteen days for twelve months.

The facts are straightforward. Appellant was issued a Coast Guard laptop computer in the course of his official duties. He used this computer to surf the internet and visit sexually explicit websites. As Appellant was preparing to leave the service, he returned the computer to his unit, where it was discovered that he had used it to commit the offenses of which he was convicted, including violations of 18 U.S.C. § 2252(a)(2). This statute prohibits wrongfully and knowingly receiving visual depictions that have been transported interstate by computer of minors engaged in sexually explicit conduct.

Before this Court, Appellant has assigned one error, that the military judge abused his discretion and erred to Appellant's substantial prejudice by admitting, over defense objection, government expert witness testimony outside the scope of Rule for Courts-Martial (RCM) 1001(b)(4) of the UCMJ. That rule sets forth the evidence in aggravation that the trial counsel may present during the sentencing phase of the trial. In pertinent part, it reads:

> The trial counsel may present evidence as to any aggravating circumstances *directly relating to or resulting from the offenses* of which the accused has been found guilty. Evidence in aggravation includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused . . . .

RCM 1001(b)(4) (emphasis added).

The expert testimony at issue, introduced during the sentencing phase of the court-martial, described the impact of child pornography upon minors depicted in pornographic images. The expert witness had viewed some of the visual depictions that were the subject of the six specifications of Charge II, and had read the detailed stipulation of fact. The expert testified that the use of children to make the pornographic images was an emotionally traumatic event for the child and was a form of sexual abuse. She testified that children who are subjected to such sexual abuse were more likely to have behavioral problems, to develop personality disorders and substance abuse disorders, to have problems in school and with relationships, to suffer depression and a higher risk of suicide, and to develop psychiatric problems. She also testified that certain symptoms such as self-destructive behavior, social withdrawal, and feelings of shame, despair and hopelessness are more common in people who have suffered childhood

2

sexual abuse. On cross-examination, the expert admitted that she neither knew who the children in the images were or their ages, nor where, when, or under what circumstances the images were taken.

First, it is clear that the children exhibited in the images which are the subject of the six specifications under Charge II were victims of those violations of 18 U.S.C. 2252(a)(2). *See* our recent opinion in *United States v. LaBean*, __ M.J. __ (C.G.Ct.Crim.App. Nov. 7, 2001). *See also United States v. Rugh*, 968 F.2d 750 (8th Cir. 1992) (primary victim of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) is the exploited child). As noted in *LaBean*, the Court of Appeals for the Seventh Circuit recently examined this statute and determined that although society at large was a victim of this offense, the primary victims were the exploited children depicted in the pornographic images. *United States v. Sherman*, 2001 U.S. App. LEXIS 21708 (7th Cir. Oct. 11, 2001). The Court of Appeals in *Sherman* stated:

> The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters . . . . Children also suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse secret. Indeed, one of the reasons for criminalizing the "mere" possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted . . . . Because the children depicted in the pornography suffer a direct and primary emotional harm when another person possesses, receives or distributes the material, we join the six circuits that have concluded that these counts should not be grouped under [the provision of the sentencing guidelines]. Although society at large is also a victim of these crimes, the primary, identifiable victim is the child portrayed, who must live with the knowledge that adults like [Appellant] can pull out a picture or watch a video that has recorded the abuse of that child at any time.

*Id.* at *21, *22, *24 (citations omitted).

Because the children depicted in the pornographic images were the primary victims of Appellant's offenses under Charge II, evidence was admissible under RCM 1001(b)(4) during sentencing as to any aggravating circumstance, including psychological impacts to these child-victims directly relating to or resulting from those offenses.

In the Assignment of Error, Appellant contends that the expert testimony was outside the scope of RCM 1001(b)(4) because it was "speculative, tenuous and not . . . sufficiently direct or related to Appellant's offenses" and did not show that "any particular child suffered any particular harm." Appellant Br. at 10, 12. Appellant's contention that the link between the expert testimony and the child victims' was not sufficiently direct appears to rest on two arguments. We list these separately to facilitate analysis of the issue: (1) the testimony did not relate to the particular children displayed in the images viewed by Appellant and (2) it did not establish that these particular victims actually suffered any adverse impact, only that there was an increased risk to sexually abused minors generally of developing complications from the abuse. As to the latter assertion, our higher Court has concluded that similar expert testimony of

increased risk of future damage to identified victims is admissible. *United States v. Stark*, 30 M.J. 328 (CMA 1990) (holding that an expert was qualified to testify during sentencing that child-victims of sodomy were at higher risk of suffering long term psychological effects of the abuse); *United States v. Hammond*, 17 M.J. 218 (CMA 1984) (holding that a military judge did not abuse his discretion by admitting expert testimony regarding the aftereffects that a rape may have had upon a victim, based on expert's review of stipulation of fact and observation of rape victim's testimony; predated RCM 1001(b)(4)); *see also United States v. Hancock*, 38 M.J. 672 (AFCMR 1993) (holding that expert testimony during sentencing describing typical behavioral response by wives to being beaten repeatedly by their husbands was proper victim impact evidence under RCM 1001(b)(4)); *United States v. Snodgrass*, 22 M.J. 866 (ACMR 1986) (holding that testimony of expert in field of child sexual abuse, based on review of stipulation of fact and sworn statements of Appellant, the child-victim and the victim's brother, was admissible concerning likely effects of sodomy and indecent acts on child-victim). These cases make it clear that if the child victims of these offenses had been identified, then expert testimony would have been admissible under RCM 1001(b)(4) regarding their increased risk of developing behavioral problems and psychological disorders relating to or resulting from the offenses. The rule permits such expert testimony related to increased risk even though the testimony does not establish that the victim actually suffers from a particular disorder.

With regard to Appellant's assertion that the testimony in question did not relate to the particular children depicted in the images on the internet, RCM 1001(b)(4) does not demand that the victim of the offense be identified. It would be rare indeed to be able to actually identify a particular child portrayed in an image received in violation of 18 U.S.C. 2252(a)(2). In our view, actual identification of the victim child is not required for admissibility of expert testimony under RCM 1001(b)(4) where, as here, the expert testifies that the child-victim, whoever he or she is, would suffer an increased risk of developing the problems and disorders described. Our holding provides the sentencing authority with the information needed to fairly assess the consequences of this type of offense, where neither the primary victim nor the nature and magnitude of the impact on the victim are obvious. Such information is a basis for RCM 1001(b)(4). This rule was intended to be consistent with our higher Court's interpretation of an earlier Manual provision on this subject, paragraph 75(b)(3). *See* Manual for Courts-Martial (MCM), App. 21, part II, Rule 1001. In *United States v. Vickers* the Court stated that "the prosecution after findings of guilty may present evidence which is directly related to the offense for which an accused is to be sentenced *so that the circumstances surrounding that offense or its repercussions may be understood by the sentencing authority*." 13 M.J. 403, 406 (CMA 1982) (emphasis added). The expert testimony concerning increased risks suffered by child-victims of Appellant's offenses, whether or not those victims are identified with particularity, is precisely the type of information needed to assist the sentencing authority in understanding the repercussions of Appellant's criminal conduct. We find that expert testimony regarding the increased risk of such impacts on child abuse victims generally, such as the testimony presented in this case, is, as a practical matter, the best available victim-impact evidence for this offense.

Appellant cites *United States v. Rust*, 41 M.J. 472 (1995), in support of his assignment of error. In that case, Major Rust, the obstetrician on call for a military hospital, was convicted of dereliction of duty for failing to come to the hospital to examine the pregnant spouse of an Army enlisted member who was at the hospital complaining of certain symptoms related to her

pregnancy. The pregnant dependent went home and then to a local civilian hospital, where she was diagnosed as being in premature labor and then moved to another civilian hospital. She gave birth to a premature baby boy who died three days later. Two days later, the woman's lover, and father of the premature baby, strangled the woman and then killed himself. He left a suicide note that attributed his actions in part to the death of the baby. Trial counsel introduced the suicide note during presentencing as evidence in aggravation of the offense of dereliction of duty. The Air Force Court of Military Review held that the military judge abused his discretion by admitting the murder-suicide note because there was no nexus between Major Rust's conduct and the murder-suicide. *United States v. Rust*, 38 M.J. 726 (AFCMR 1993). The Air Force Court held that although the murder-suicide may relate to Major Rust's negligence in some logical fashion, the murder-suicide was the independent result of the father's disturbed mind. The Court of Appeals for the Armed Forces agreed, holding that:

> [E]ven assuming *arguendo* that [the father's] criminal acts were logically connected to the crime, the connection is too indirect to satisfy the requirement of RCM 1001(b)(4) that the consequences be "directly related to or resulting from" Maj Rust's dereliction of duty.

41 M.J. at 478. In holding that the murder-suicide was too remote from the dereliction offense to be considered directly related, our higher Court dealt with the "proximate causation" problem. Proximate cause is not at issue in the instant case. Here, the connection between the offenses and the increased risk of developing behavioral problems and disorders is clear and directly related. The expert in this case testified that victims of child abuse suffer an increased risk of developing behavioral problems and disorders. While a particular child victim might grow up disorder-free, or develop a disorder for reasons completely unrelated to being photographed in these depictions, the fact remains that, in this expert's opinion, child-victims suffer an "increased risk" of developing such a disorder as a direct result of being so photographed.

Finally, Appellant argues that, even if admissible under RCM 1001(b)(4), the expert's testimony regarding child-victims' increased risks of developing various disorders is of so little relevance that the probative value of the testimony is outweighed by the danger that the testimony unfairly prejudiced the sentencing authority, and that the judge's consideration of the testimony violated MRE 403. We disagree, particularly in light of the judge's following explanation when he ruled on admission of the testimony:

> I did indicate that I would evaluate the testimony and decide whether or not it reaches the higher test for admissibility laid out in 1001 and in this case I think to a limited extent it does. I think the doctor did testify that based on her looking at the visual depictions and reading the stipulation of fact and even limiting it to the fact that these children were abused just by having their photographs taken without their clothes on, that there is some higher risk for certain behavioral problems, which the doctor described. I think that testimony reaches the higher standard required by 1001 and I'll consider the testimony for that purpose, that these victims may be subject to that higher risk based on these photographic sessions. . . . And, of course, I recognize that the accused didn't actually take the photos and that the accused is only associated in having downloaded the photographs and also that it's been the – or the accused's admission is not that he was

actually looking in particular for pictures of children but just that he was looking for pictures of pornography and happened to have these pictures mixed in with them. So taking all of those caveats I think the evidence is admissible and for whatever limited weight it has I'll consider it.

R. at 303-04. We find the testimony to be helpful to the sentencing authority, and, as limited by the military judge in this case, appropriate and admissible under RCM 1001(b)(4) and 403.

Conclusion

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved and partially suspended below, are affirmed.

Chief Judge Baum and Judge Kantor concur.

For the Court,



Kevin G. Ansley
Clerk of the Court