**UNITED STATES of America**

v.

**Austin A. MILES, Missile Technician Seaman (E–3), U.S. Navy.**

**NMCCA 201100578.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 20 July 2011.

17 Oct. 2012.

For Appellant: LCDR Michael R. Torrisi, JAGC, USN; LT Ryan Mattina, JAGC, USN.

For Appellee: Capt Samuel C. Moore, USMC; LT Ian MacLean, JAGC, USN.

Before M.D. MODZELEWSKI, E.C. PRICE, C.K. JOYCE, Appellate Military Judges.

## PUBLISHED OPINION OF THE COURT

MODZELEWSKI, Senior Judge:

A general court-martial with enlisted representation convicted the appellant, contrary to his pleas, of one specification of possessing 189 images and 27 videos of child pornography on his laptop computer, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The convening authority (CA) approved the adjudged sentence of three years confinement, total forfeiture of pay and allowances, reduction to pay grade E–1, and a dishonorable discharge.

The appellant now alleges two errors. First, he asserts that the sole charge and specification is fatally flawed because it is charged in the disjunctive—"prejudicial to good order and discipline" or "service discrediting." Second, he avers that since he was not charged with child abuse, the military judge committed plain error by permitting a Government expert to testify during sentencing about the impact of sexual abuse on children in general, and by permitting the trial counsel to use this expert's testimony in argument on sentence.

After considering the record of trial and the parties' pleadings, we conclude that the findings and sentence are correct in law and fact and no errors materially prejudicial to the substantial rights of the appellant were committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

## I. Factual Background

The appellant's roommate borrowed the appellant's laptop computer and discovered files with names suggesting child pornography. The roommate reported the incident to his command, and the command notified the Naval Criminal Investigative Service (NCIS). Two days later, Special Agent Boswell of NCIS interviewed the appellant, who admitted to searching for, downloading, and possessing child pornography. Further relevant facts are developed below as necessary.

## II. The Disjunctive Terminal Element

The appellant alleges that the sole specification is fatally flawed because it is charged in the disjunctive instead of the conjunctive. As a result, he claims, the specification failed to provide him notice and failed to protect him from double jeopardy. Moreover, he argues, the guilty finding is ambiguous and this court is therefore unable to conduct its review under Article 66(c), UCMJ. We disagree.

As a preliminary matter we must determine if review under Article 66(c), UCMJ, is possible. Article 66 requires a court of criminal appeals to conduct a *de novo* review of the factual and legal sufficiency of each conviction before it. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002). This court may affirm only those findings of guilt that it finds correct in law and fact and determines, on the basis of the entire record, should be approved. Art. 66(c), UCMJ. If a verdict is ambiguous, review under Article 66(c) is not possible. While not specifically articulated by the defense, we must determine whether clauses 1 and 2 of Article 134 represent different elements and therefore establish two separate offenses, or whether those clauses are merely different theories of liability under which an accused can be found guilty of the same crime.

This is a matter of first impression; however, the terminal element has been the subject of considerable recent jurisprudence. In dicta, the Court of Appeals for the Armed Forces has consistently reasoned that " '[t]he three clauses [of Article 134] do not create

separate offenses. Instead, they provide alternative ways of proving the criminal nature of the charged misconduct.' " *United States v. Medina*, 66 M.J. 21, 25 (C.A.A.F.2008) (quoting *United States v. Sapp*, 53 M.J. 90, 92 (C.A.A.F.2000)). Consistent with the reasoning in *Medina*, we conclude that clauses 1 and 2 of Article 134 are two different theories of liability under which an accused can be found guilty for one crime. While charging in the disjunctive is disfavored,[1] under Article 134, it does not automatically render the specification fatally defective.

■ When the charge presents multiple or alternate theories of liability, a general guilty verdict to the charge attaches a guilty verdict to all of the theories. *United States v. Rodriguez*, 66 M.J. 201, 204 (C.A.A.F.2008) (citing *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970)). "It makes no difference how many members chose one act or the other, one theory of liability or the other. The only condition is that there be evidence sufficient to justify a finding of guilty on any theory of liability submitted to the members." *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F.2007) (quoting *United States v. Vidal*, 23 M.J. 319, 325 (C.M.A.1987)). Here, there was evidence presented that the appellant's possession of child pornography was both service discrediting and prejudicial to good order and discipline.

■ The appellant relies on *United States v. Walters*, 58 M.J. 391 (C.A.A.F.2003) for the proposition that the findings of guilty in his case are so ambiguous that this court cannot properly conduct an Article 66(c) review. His reliance is misplaced, as the specificity required by *Walters* applies only in those "narrow circumstance[s] involving the conversion of a 'divers occasions' specification to a 'one occasion' specification through exceptions and substitutions." *Id.* at 396; *see also Rodriguez*, 66 M.J. at 205; *Brown*, 65 M.J. at 358.

As clauses 1 and 2 do not allege different offenses, we find that the verdict in this case

---

1. *United States v. Gonzalez*, 39 M.J. 742, 749 (N.M.C.M.R.1994), *aff'd* 42 M.J. 469 (C.A.A.F. 1995); *United States v. Woode*, 18 M.J. 640, 641 (N.M.C.M.R.1984).

was not ambiguous, and we continue our review under Article 66(c).

Next, we turn to the appellant's contention that the specification as pled is defective, failing to both provide sufficient notice and protect against double jeopardy. Whether a specification is defective and the proper remedy when a specification is defective are questions of law, which an appellate court reviews *de novo*. *United States v. Humphries*, 71 M.J. 209 (C.A.A.F.2012). Where an issue is raised for the first time on appeal, the issue is forfeited in the absence of plain error. *Id.* Plain error can be established if: (1) there was error; (2) the error was plain or obvious; and (3) the error was materially prejudicial to the appellant's substantial rights. *Id.*

■ The two elements of an Article 134 offense are: (1) that the appellant did or failed to do certain acts; and (2) that under the circumstances, the appellant's conduct was to the prejudice of good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), Part IV, ¶ 60. It is now well-established that the "terminal element" must be pled or necessarily implied in order to provide an accused with notice of what he must defend against. *United States v. Fosler*, 70 M.J. 225, 230 (C.A.A.F.2011). Here, the specification alleged that the appellant possessed child pornography at a particular time and location and that the "conduct was prejudicial to good order and discipline or likely to bring discredit upon the armed forces." As such, the specification provided the appellant both with ample notice of the conduct that he was to defend against and with notice that he must defend against two theories of liability. Moreover, the specification clearly protects the appellant against double jeopardy. We find that the charge and specification properly state an offense.

■ We conclude that the appellant was properly on notice of the charge, that he was not misled or confused as to what he was to defend against, and that he was not left vulnerable to double jeopardy. Moreover, we conclude that the findings of the court-martial are not ambiguous, that the evidence was sufficient to justify findings of guilty on either theory submitted to the members, and that we may properly conduct our Article 66(c) review.

## III. Sentencing Evidence in Aggravation

We turn next to the question of whether the military judge erred in allowing Dr. D'Urso to testify during the Government's sentencing case about the impact of sexual abuse on a victim, and two related issues: whether the military judge further erred by failing to instruct the members to limit their consideration of Dr. D'Urso's testimony, and whether trial counsel made improper use of the testimony in argument on sentence. We find that the objection to Dr. D'Urso's testimony was specifically waived. We also find no error with regard to the presentencing instructions and trial counsel's argument.

### A. Testimony of Dr. D'Urso

■ The appellant conflates the testimony and objections thereto, of two Government witnesses in sentencing, Mr. Michael Brick and Dr. D'Urso. A detective, Mr. Brick had investigated a case involving the production of child pornography 40 years ago. Some of the images that the appellant possessed were from Mr. Brick's case. Dr. D'Urso, a clinical psychologist, had treated numerous victims of both child sexual abuse and child sexual abuse with pornography.

In an Article 39(a), UCMJ, session prior to its sentencing case, the trial counsel made a proffer of Mr. Brick's testimony. The defense objected to Mr. Brick testifying about the circumstances under which some of the pornography was produced, the evolution of child pornography, and the impact of child pornography on society at large. Record at 911–14. The military judge limited the testimony of the detective, ruling ". . . the abuse that we're particularly talking about is the creation of child pornography, so one place . . . I'm not going to let you go is into any collateral offenses related to these prosecutions of the perpetrators who also made child pornography." *Id.* at 914. Defense counsel clarified his objection to "the original abuse coming in," arguing the creation of child

pornography was too attenuated from the offenses in this case. *Id.* at 916. The military judge overruled the objection, finding the impact of the creation of child pornography admissible, citing *United States v. Marchand,* 56 M.J. 630 (C.G.Ct.Crim.App.2001); *United States v. Sherman,* 268 F.3d 539 (7th Cir.2001). Record at 915–16.

Immediately thereafter, the military judge requested a proffer of Dr. D'Urso's expected testimony from trial counsel. Trial counsel replied that "he's here to educate the members that the underlying abuse is one thing that can be dealt with, but when child pornography is added it compounds the psychological harm...." *Id.* at 919. In response to the proffer, trial defense counsel said, "We don't have any objection to that, sir." *Id.* When called, Dr. D'Urso testified consistent with the proffer and without any objection from the trial defense counsel. The appellant now argues that this assignment of error was fairly embraced within the defense objection to the testimony of Mr. Brick, but neglects to address the specific waiver of trial defense counsel.

We find that the appellant affirmatively waived objection to the testimony of Dr. D'Urso. A specific waiver of an evidentiary objection extinguishes error, unlike forfeiture, which is reviewed for plain error under MILITARY RULE OF EVIDENCE 103(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). *United States v. Olano,* 507 U.S. 725, 733–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see also United States v. Gladue,* 67 M.J. 311, 313 (C.A.A.F.2009) (holding intentional waiver at trial extinguishes it from appellate review); *see also United States v. Campos,* 67 M.J. 330 (C.A.A.F.2009). Although we are not bound by the waiver doctrine due to the plenary powers granted us by Article 66(c),[2] we nevertheless find this an appropriate case to apply waiver.

■ Even in the absence of waiver, we would likewise decline to grant relief under the plain error standard because the military judge did not err in permitting the testimony. Proper evidence in aggravation is:

directly relating to or resulting from the offenses of which the accused has been found guilty. Evidence in aggravation includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused....

RULE FOR COURTS MARTIAL 1001(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.).

First, we conclude that Dr. D'Urso's testimony falls within the parameters of R.C.M. 1001(b)(4). In *Marchand,* the Coast Guard Court of Criminal Appeals found that expert testimony that sexually abused children have an increased risk for developing disorders, was proper aggravation under R.C.M. 1001(b)(4). 56 M.J. at 633. Likewise, we find that the testimony offered by Dr. D'Urso was proper evidence in aggravation. While Dr. D'Urso briefly discussed the impact of child sexual abuse, the discussion was necessary to establish a baseline so that he could specifically identify the additional impact of pornography to a child sexual abuse case. The trial counsel artfully developed a direct examination that educated the members and focused on child pornography. In cross-examination, defense counsel blurred the lines between the impact of child pornography and the underlying sexual abuse.

Secondly, we find that the probative value of his testimony was not substantially outweighed by any unfair prejudice. Because trial defense counsel did not object to Dr. D'Urso's testimony, the military judge did not articulate a MIL. R. EVID. 403, analysis on the record. However, we conclude that the probative value of the psychologist's expert testimony detailing the potential impact of child pornography on child victims was high. Moreover, the danger of unfair prejudice was low because the trial counsel limited the testimony in such a way that the focus was on the additional psychological impact of being captured in images that are widely available. Both Dr. D'Urso and the trial counsel contin-

---

2. *United States v. Nerad,* 69 M.J. 138, 144 (C.A.A.F.2010) (citing *United States v. Claxton,* 32

M.J. 159, 162 (C.A.A.F.1991)).

ually focused the testimony on identifying that part of the potential victim impact attributable to the pornography. Additionally, the military judge gave the standard instruction to the members that the appellant should be "sentenced only for the offense of which has been found guilty." Record at 1029. As there was no objection from the defense, this instruction adequately addressed any potential prejudice from the testimony of Dr. D'Urso. We find that the military judge did not err in permitting the testimony of Dr. D'Urso.

### B. Sentencing Instruction

Having found no error in admitting the testimony of Dr. D'Urso, we similarly find no merit in the appellant's argument that the military judge erred in his instructions to the members regarding that testimony.

### C. Argument of Trial Counsel

The appellant next objects to three types of arguments made by the trial counsel: first, a group of comments asking the members to look into the eyes of the victims in the images and consider their pain; second, asking the members to remember that these victims are someone's "little girls"; and finally, requesting two weeks of confinement for every image possessed, because the victims will be in therapy for years. We find that these arguments each had a rational nexus to the evidence presented and were within the bounds of proper argument.

When a defense attorney fails to object to a sentencing argument at the time of trial, we review the statements made for plain error. *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F.2007).

■ Trial counsel may not "seek [to] unduly [ ] inflame the passions or prejudices of the court members." *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A.1983) (citations omitted). Nor can the trial counsel ask court members to place themselves in the shoes of the victim or a near relative. *United States v. Baer*, 53 M.J. 235, 237–38 (C.A.A.F.2000). An argument asking the members to imagine the victim's fear, pain, terror, and anguish is permissible. *Id.* at 238. In *United States v.*

*Marsh*, 70 M.J. 101, 106 (C.A.A.F.2011), the court held that arguments must have a "rational nexus" to the evidence presented.

■ We find a rational nexus between the evidence presented and each of the arguments raised. First, the violent nature of the pictures the appellant possessed is proper aggravation. Trial counsel went one step further and drew attention to the vulnerability and embarrassment of the child victims. Dr. D'Urso educated the members that victims of child pornography suffer psychological harm because the extent of their exposure is unknown: the victim does not know who has witnessed them at their most vulnerable. We find a rational nexus between this testimony and asking the members to take notice of the pain in the victims' eyes and the way that one child was moved like an object.

■ Additionally, the evidence at trial established that many of the victims in this case are unidentified. Trial counsel's reference to the victims being someone's little girls has a rational nexus to the evidence because it is appropriate to remind the members that, even though the victims are unnamed and did not come to court and testify, they are real people.

■ Finally, Dr. D'Urso testified that treatment for victims of child pornography was a particular challenge because it was impossible to define a beginning and an end to the victimization. We find a rational nexus between the evidence that this pornography exists in perpetuity, that it causes additional psychological harm and that it may necessitate additional therapy, and the argument that the appellant should receive two weeks confinement per image. Trial counsel did not distinguish which part of the therapy could be attributed to the pornography aspect of the abuse, nor is it clear that such a thing could be quantified. We find no error, and certainly no plain error, in the sentencing argument of trial counsel.

Even assuming error, we find that trial counsel's argument did not materially prejudice a substantial right of the appellant. We consider this matter within the framework adopted in *Erickson*, balancing three factors: (1) the severity of the misconduct, (2) the

measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the sentence. 65 M.J. at 224 (quoting *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F.2005)). First, as is clear from our analysis above, we find any misconduct in the form of improper argument to be *de minimis*. Secondly, because defense counsel did not object, the military judge gave no curative instruction, but his standard instructions included an admonition that the members "bear in mind that the accused is to be sentenced only for the offense of which he has been found guilty." Record at 1029. Thirdly, the sentence is supported by the weight of the evidence, which included numerous videos of extremely graphic offenses against children.

The appellant faced a maximum sentence that included confinement for ten years. The trial counsel argued for a sentence of eight years confinement, and the members adjudged three years, a sentence well-within the range typically adjudged in child pornography cases. Trial counsel's comments, taken as a whole, were not so damaging that we lose confidence that the appellant was sentenced on the basis of the evidence alone. *Erickson*, 65 M.J. at 224. Instead, we conclude that the sentence adjudged was properly based on all relevant sentencing factors. *Id.* at 225.

In sum, we find that trial counsel's sentencing argument was not improper, not plainly erroneous, and caused the appellant no material prejudice.

### IV. Conclusion

We affirm the findings and the sentence as approved by the CA.

Judge PRICE and Judge JOYCE concur.