# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40326**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Joel T. BICKFORD**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 February 2024

———————————

*Military Judge*: Christopher S. James (pretrial motions and arraignment); Dayle P. Percle.

*Sentence*: Sentence adjudged 14 April 2022 by GCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey. Sentence entered by military judge on 24 May 2022: Dishonorable discharge, confinement for 18 months, and reduction to E-1.

*For Appellant*: Major Samantha P. Golseth, USAF.

*For Appellee*: Lieutenant Colonel G. Matt Osborn, USAF; Major Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, GRUEN, and KEARLEY, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge GRUEN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

KEARLEY, Judge:

At a general court-martial, Appellant entered mixed pleas to two specifications. A military judge convicted Appellant, consistent with his pleas, of one specification of possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] Contrary to Appellant's pleas, a panel of officer and enlisted members found Appellant guilty of one specification of soliciting the distribution of child pornography in violation of Article 82, UCMJ, 10 U.S.C. § 882. The members sentenced Appellant to a dishonorable discharge, confinement for 18 months, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant asserts three issues,[2] which we have reworded and reordered into four issues: (1) whether the military judge erred in allowing the Government to present irrelevant "victim impact" evidence during findings; (2) whether trial counsel committed prosecutorial misconduct by improperly arguing "victim impact" evidence during findings and sentencing arguments; (3) whether Appellant's conviction for soliciting the distribution of child pornography is legally and factually sufficient because the person Appellant solicited was not subject to the UCMJ; and (4) whether Appellant was deprived of his constitutional right to a unanimous guilty verdict.

As to Appellant's third issue, this court has previously addressed the legal and factual sufficiency where the solicited person was not subject to the UCMJ. Therefore, Appellant's third issue does not warrant further discussion. *See United States v. Heppermann*, 82 M.J. 794, 800 (A.F. Ct. Crim. App. 2022) (finding solicitation to distribute child pornography in violation of Article 82, UCMJ, was legally and factually sufficient where the solicited person was not subject to the UCMJ), *rev. denied*, 83 M.J. 103 (C.A.A.F. 2022); *see also United States v. Massey*, No. ACM 40017, 2023 CCA LEXIS 46, at *18 (A.F. Ct. Crim. App. 30 Jan. 2023) (unpub. op.) ("[T]he question is whether the solicited offense would be punishable under the UCMJ if committed by someone subject to the UCMJ, and not whether the solicited person him- or herself is in fact subject to the UCMJ." (Citing *Heppermann*, 82 M.J. at 799)), *rev. denied*, 83 M.J. 317 (C.A.A.F. 2023).

---

[1] Unless noted otherwise, all references to the UCMJ, the Military Rules of Evidence, and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant's first assignment of error read: "whether trial counsel elicited inadmissible 'victim impact' evidence during findings and argued the same during findings and sentencing arguments, materially prejudicing Appellant." We reworded this phrase into two separate assignments of error.

We have carefully considered Appellant's fourth issue and find it does not require discussion or warrant relief. *See United States v. Anderson*, 83 M.J. 291, 302 (C.A.A.F. 2023) ("[a]ppellant did not have a right to a unanimous verdict at his court-martial under the Sixth Amendment[3], Fifth Amendment[4] due process and Fifth Amendment equal protection").

We find no error materially prejudicial to Appellant's substantial rights and affirm the findings and the sentence.

## I. BACKGROUND

During Appellant's court-martial, Federal Bureau of Investigation (FBI) Special Agent (SA) MV testified for the Government. SA MV explained how he came to investigate Appellant. SA MV described how he was investigating a civilian, PB, who was using Internet accounts, email, and a profile on a photo-sharing website to advertise and trade child pornography. During an interview, PB granted SA MV access to his email account. SA MV saw an email from Appellant asking if the offer to trade was still available and referencing a post on a photo-sharing website in a section titled "kids." SA MV responded as though he was PB and told Appellant to contact him via a specific account name, on a separate messaging application, which SA MV controlled. On that application, SA MV exchanged several messages with Appellant. In those messages Appellant said the following:[5]

> [Appellant:] Hey it's [Appellant] I emailed you the other day
>
> . . . .
>
> [Appellant:] I'm the one who asked if your offer to trade was still up, and I'm looking more specifically for any videos in English and the girl is enjoying it
>
> . . . .
>
> [Appellant:] Thanks man your awesome [thumbs up emoji] also if you have anything of a girl named [N1[6]] she is a little [color of hair] that would be appreciated
>
> . . . .

---

[3] U.S. CONST. amend. VI.

[4] U.S. CONST. amend. V.

[5] Unless otherwise noted, content from these messages appears without correction.

[6] Out of respect and in the interest of privacy, "N1" is a pseudonym for the victim.

[Appellant:] . . . I got a lot of Asian vids but I haven't gotten anything of her. I'm pretty new to this scene

. . . .

[Appellant:] It was just easier to find, that and Russian vids but The stuff I want is anything in English and for me any age range is fine

. . . .

[Appellant:] I'll see if if I have any pics of her so we know we're talking about the same person . . .

. . . .

[Appellant:] [Sends image of N1[7]] This her

[SA MV:] oral? or anal? or both [smiling sunglasses emoji]

[Appellant:] Why not both.

After this exchange, SA MV issued a subpoena to the messaging application for records that included Internet Protocol (IP) address logs to identify subscribers for those IP addresses. The subscriber for the IP address associated to the above message exchange was linked to Appellant's dorm room address on Joint Base McGuire-Dix-Lakehurst, New Jersey.

Next, trial counsel called a special agent with the Iowa Department of Public Safety, Division of Criminal Investigation, SA JM. SA JM testified about her role in assisting with search warrants and discovering the victim and her perpetrator of the N1[8] series of child pornography. SA JM also described how the child's step-uncle was the perpetrator and that he made approximately 20,000 photos and videos of N1 while she was approximately 5 to 9 years old. SA JM described the content in this series included oral and anal sexual abuse of N1. SA JM indicated that after N1's step-uncle was convicted, SA JM continued to be involved in matters associated with the N1 series because other law enforcement entities requested information from her for assistance with their own N1 investigations.

---

[7] Appellant sent a non-explicit image of N1 to SA MV, "so [they knew they were] talking about the same person."

[8] We also use "N1" as a pseudonym for the series of child pornography.

## II. DISCUSSION

### A. Irrelevant "Victim Impact" Evidence

Appellant claims that trial counsel elicited irrelevant, inadmissible victim impact evidence during direct examination of SA JM. We find the military judge did not err in admitting, with no defense objection, testimony provided by SA JM. The evidence elicited was *res gestae* evidence relevant to the specification at hand, permissible in findings, and as such we do not find error in how that testimony was used in findings.

#### 1. Additional Background

During opening statements, trial counsel displayed a photo and stated,

> This is [N1]. Or at least that is what she is referred to by those seeking to receive and watch videos of her being sexually abused.

> In this photo [N1] is between the age of five and nine years old, and [N1] was abused and molested for years, and photos and videos of her molestation were made and posted to the Internet while it occurred. The man that abused and molested [N1] would then distribute these photos across the Internet for those who wanted to look at child pornography. . . . The recordings of her molestation are among some of the [ ] most highly demanded evidence of child pornography across the Internet. And [Appellant] is one of those individuals who wanted and solicited images and videos of her molestation.

Trial defense counsel did not object to comments made in trial counsel's opening statement.

During the Government's case-in-chief SA JM testified that she was familiar with the series of child pornography involving N1 because she was requested by the FBI to assist in the investigation. SA JM ultimately discovered the identities of the perpetrator and N1. She confirmed that the victim was reported to the National Center for Missing and Exploited Children and was considered a "known victim."

Additionally, the following exchange took place during circuit trial counsel's direct examination of SA JM:

> Q. As part of the questioning of [N1's step-uncle], did he make any sort of admissions to producing child pornography featuring the victim in the [N1] series?

> A. Yes, sir.

> . . . .

Q. Did this individual – the step-uncle – describe for you approximately how many videos he may have made – or to law enforcement – of her sexual exploitation?

A. He said that he made approximately 20,000 photos and videos of the victim.

Q. And how old was the victim during the time of the abuse?

A. She was approximately between the ages of five and nine years old when the abuse happened.

Q. I'm *not asking you to describe anything specific in any of the videos*, but generally speaking, what sort of sexual content was produced as part of this known series of child pornography?[9]

A. There was oral sexual abuse and anal sexual abuse.

. . . .

Q. Now, during this 2-to-3-year time period when you became the primary point of contact for this particular series, could you just give us an approximation of how frequently you get requests for this particular series?

A. I suppose it would be on average 2 to 3 emails a week, sometimes more.

[Civilian Defense Counsel (Civ DC)]: Objection, Your Honor. I think we're getting a little – – relevance.

[Military Judge (MJ)]: Sustained. Trial counsel, you can move on.

[Circuit Trial Counsel (CTC)]: Your Honor, may I just be heard briefly?

MJ: No. I sustained the objection.

[CTC]. Based on your continuing involvement in this case, is it your understanding this is a widely trafficked series of child pornography on the Internet?

A. Yes, sir.

(Emphasis added).

---

[9] Later, SA JM testified that "a known series of child pornography" includes a victim that is known by the National Center for Missing and Exploited Children and law enforcement.

SA JM confirmed that the photo Appellant provided to SA MV when requesting photos of N1 was indeed a photo of the victim in the N1 series of child pornography. The above objection was the only objection to SA JM's testimony.

**2. Law**

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record; (2) the military judge uses incorrect legal principles; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge fails to consider important facts. *United States v. Rudometkin*, 82 M.J. 396, 401 (C.A.A.F. 2022) (citations omitted).

Whether an accused has waived or instead forfeited an issue is a question of law this court reviews de novo. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). In the absence of waiver, a plain error standard of review applies to situations where a counsel fails to object or where an objection failed to preserve discrete issues. "[W]e review forfeited issues for plain error." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020).

"Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Mil. R. Evid. 401.

The military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Mil. R. Evid. 403.

**3. Analysis**

Appellant claims SA JM's testimony regarding the background of the N1 series constituted "inadmissible and irrelevant victim impact testimony." Regarding admissibility, contrary to Appellant's suggestion, the testimony he is now objecting to was not victim impact testimony. It was witness testimony

offered during the Government's case-in-chief and before findings, not during pre-sentencing.[10]

We also disagree that SA JM's testimony was irrelevant. Appellant argues the military judge erred in allowing circuit trial counsel to ask SA JM about her "investigation, arrest and questioning of an individual who was suspected of sexually abusing his niece and creating child pornography, when there was never and has never been a connection between Appellant and the suspect that SA JM interviewed."

Trial defense counsel did not object to any questions posed to SA JM during direct examination as to the creation and contents of the N1 series. Appellant suggests—and we agree—that because Appellant did not object to SA JM's testimony, we review for plain error.

We do not find that SA JM's testimony about the creation of the N1 series was plainly irrelevant or improper. SA JM's testimony was relevant in findings to prove elements of the offense with which Appellant was charged. The testimony tended to prove N1 is a real person who was a minor, approximately between the ages of five and nine years old, at the time when the photos and videos were created. The testimony tended to prove images involving N1 were images of an actual minor engaging in sexually explicit conduct. The testimony tended to prove that Appellant's request for images "of a girl named [N1]" who "is a little [girl with a certain color of hair]," followed by her photo, was a request for images of the same child victim that SA JM discovered in her investigation of the N1 series. SA JM's testimony proved Appellant was intentionally and wrongfully seeking images which were part of a child pornography series with a known victim.

Appellant further contends the military judge erred by not instructing the panel to disregard SA JM's testimony after sustaining the objection about how many requests SA JM receives about the N1 series. At the beginning of the trial, the military judge explained her duties to the members of the court, stating her duty was to ensure the trial is conducted in a fair, orderly, and impartial matter according to law. The military judge instructed the members that when she sustains an objection, they are to "disregard the question and the

---

[10] We note that evidence, which in sentencing could be considered aggravating "victim impact" evidence, is not necessarily inadmissible in findings. The sentencing authority may consider "matters in extenuation, mitigation, and aggravation, whether introduced *before or after findings* . . . ." Rule for Courts-Martial (R.C.M.) 1005(e)(5) (emphasis added); *see also* R.C.M. 1001(g) ("In addition to matters introduced under [R.C.M. 1001], the court-martial may consider . . . (2) Any evidence properly introduced on the merits before findings, including: (A) Evidence of other offenses or acts of misconduct even if introduced for a limited purpose . . . .").

answer." Given this instruction, there was no requirement on the part of the military judge to *sua sponte* reinstruct the members after sustaining the objection.[11] Furthermore, before deliberations, the military judge properly instructed the members on the elements of Appellant's offense of solicitating the distribution of child pornography. Finally, Appellant waived this issue by not requesting a special instruction regarding SA JM's answer to the question about how many requests she received about the N1 series. *See Davis*, 79 M.J. at 331.

For the reasons cited above, we do not find the military judge plainly erred in allowing SA JM's testimony during the findings portion of the proceedings.

## B. Circuit Trial Counsel's Findings Argument

Appellant claims the circuit trial counsel improperly "continu[ed] to introduce the theme of abuse and trauma caused by another" in his findings argument. We first consider the portions of circuit trial counsel's arguments Appellant highlights.

### 1. Additional Background

During circuit trial counsel's findings argument, the following exchange occurred:

> CTC: . . . You heard from [SA MV]. She was the lady with the Iowa Department of Criminal Investigations. She told you about [N1]. She told you that her abuser was a family member who abused her for years.

> Now, members, anyone who has spent time with children knows that kids look to their adult for confirmation. They don't always know or understand why they are being asked to do something, and when that happens, they look at their adult and they ask, "Am I doing it right?" The child has no idea why she is being posed like that, but the person who posed her did. So did he.

> CTC: Members, when you read his words in those [application] messages, and you look at his collection, that is proof beyond a reasonable doubt. He wanted her. He wanted to watch a grown man molest that child because it was sexually gratifying for him.

[11] We further note that we presume the court members followed the military judge's prefatory instructions at the beginning of the trial to disregard testimony which was the subject of a sustained objection. *See United States v. Hornback*, 73 M.J. 155, 161 (C.A.A.F. 2014) (quoting *United States v. Thompkins*, 58 M.J. 43, 47 (C.A.A.F. 2003)) ("Absent evidence to the contrary, court members are presumed to comply with the military judge's instructions.").

Civ DC: Objection, Your Honor.

MJ: Overruled.

CTC: And he wanted others just like her to add to his collection. So from the comfort of his dorm room on this Air Force installation, he went trolling for [N1] and little girls just like her. And beyond a reasonable doubt he is guilty.

**2. Law**

"We review prosecutorial misconduct and improper argument de novo and where . . . no objection is made, we review for plain error." *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)).

Under plain error review, the appellant bears the burden to demonstrate error that is clear or obvious and results in material prejudice to his substantial rights. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (citation omitted).

"Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Fletcher*, 62 M.J. at 179.

"Improper argument is one facet of prosecutorial misconduct." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted). Prosecutorial misconduct occurs when trial counsel "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *Fletcher*, 62 M.J. at 178 (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quotation marks and citation omitted).

While a trial counsel "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Fletcher*, 62 M.J. at 179 (quoting *Berger*, 295 U.S. at 88).

"[I]t is error for trial counsel to make arguments that 'unduly . . . inflame the passions or prejudices of the court members.'" *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (omission in original) (quoting *United States v.*

*Clifton*, 15 M.J. 26, 30 (C.M.A. 1983)). Trial counsel are also prohibited from injecting into argument irrelevant matters, such as facts not in evidence or personal opinions about the truth or falsity of testimony or evidence. *See id.*; *Fletcher*, 62 M.J. at 179; Rule for Courts-Martial 919(b), Discussion. Courts have struggled to draw the "exceedingly fine line which distinguishes permissible advocacy from improper excess." *Fletcher*, 62 M.J. at 183 (quoting *United States v. White*, 486 F.2d 204, 207 (2d Cir. 1973)).

"[A]rgument by a trial counsel must be viewed within the context of the entire court-martial. The focus of [the] inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)). In performing our review, "it is improper to 'surgically carve' out a portion of the argument with no regard to its context." *Id.*

"A statement that might appear improper if viewed in isolation may not be improper when viewed in context. And even if a statement is improper, it may not be sufficiently prejudicial, in the context of the entire trial, to violate the accused's due process rights." *United States v. Cueto*, 82 M.J. 323, 333 (C.A.A.F. 2022) (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 645 (1974)).

### 3. Analysis

Appellant contends circuit trial counsel kept "the theme of abuse and trauma caused by another" and impermissibly focused his argument on the creator of the N1 series as opposed to Appellant's actions.

The military judge overruled an objection to circuit trial counsel's argument that Appellant "wanted to watch a grown man molest a child because it was sexually gratifying to *him*." (Emphasis added). In context, we read this argument to mean that Appellant wanted to view and possess those images because he believed it would be sexually gratifying to Appellant. We conducted a de novo review of the argument, and in context, we do not find this to be impermissible argument. The record confirmed Appellant wanted images in general of children engaged in both oral or anal sexual abuse where "the girl is enjoying it" and—in his own words—"any age range is fine." Moreover, the record establishes Appellant was also seeking images of the same girl as the victim in the N1 series. This evidence is relevant because it proves he knowingly sought images of real minors engaged in sexually explicit conduct without any legal justification.

While circuit trial counsel referenced the origins of the N1 series of child pornography, circuit trial counsel did not imply that the members should find Appellant guilty of the crimes committed by others in creating the series. We

find no error, plain or otherwise, and therefore no prosecutorial misconduct related to circuit trial counsel's findings argument.

## C. Circuit Trial Counsel's Sentencing Argument

Appellant claims the circuit trial counsel continued to focus on the details related to N1's abuse and the creation of child pornography, and not on the details of Appellant's actions.

### 1. Additional Background

During sentencing proceedings, circuit trial counsel argued:

> Now, the list goes on with these images. These are children whose bodies have not even remotely started to develop, but in those videos[12], they are assaulted in every orifice. And they are assaulted by men with grown penises. Think about that, a pre-pubescent child who has not gone through puberty is being assaulted by a fully pubescent grown man and what that would've done. Every image he collected, every video he wanted is another child who is being exploited. Let's be clear about one other thing: those children, they are the victims, not [Appellant]. It is unfortunate. It is truly unfortunate that the consequences of his actions are going to be felt by his family members. That's unfortunate that the confinement time is going to affect them because they didn't do this, but he did. So keep that in mind when you're determining what is an appropriate sentence; who is the victim here?

Trial defense counsel did not object to this argument.

### 2. Law

The issue of "[i]mproper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citation omitted). However, if the defense does not object to a sentencing argument by trial counsel, we review the issue for plain error. *Id.* (citing *Erickson*, 65 M.J. at 223). To establish plain error, an appellant "must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right." *Id.* at 106 (citing *Erickson*, 65 M.J. at 223). Because "all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United*

---

[12] The record showed that Appellant possessed still images from videos of child pornography. There was no evidence that he possessed actual videos.

*States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006). The burden of proof under a plain error review is on the appellant. *See id.* (citation omitted).

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *Frey*, 73 M.J. at 248 (quoting *Baer*, 53 M.J. at 237). Three factors guide our determination of the prejudicial effect of improper argument: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s]." *Sewell*, 76 M.J. at 18 (alteration in original) (quoting *Fletcher*, 62 M.J. at 184). In some cases, "the third factor may so clearly favor the [G]overnment that the appellant cannot demonstrate prejudice." *Id.* (citing *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013)).

In *Halpin*, the United States Court of Appeals for the Armed Forces (CAAF) extended the *Fletcher* plain error test to improper sentencing argument. 71 M.J. at 480. "In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence alone." *Id.* (alteration, internal quotation marks, and citation omitted).

The CAAF has identified five indicators of severity of improper argument:

> (1) the raw numbers—the instances of misconduct as compared to the overall length of the argument[;] (2) whether the misconduct was confined to the trial counsel's rebuttal or spread throughout the findings argument or the case as a whole; (3) the length of the trial; (4) the length of the panel's deliberations; and (5) whether the trial counsel abided by any rulings from the military judge.

*Fletcher*, 62 M.J. at 184 (citation omitted).

In assessing prejudice, the lack of a defense objection is "'some measure of the minimal impact' of a prosecutor's improper comment." *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

"Trial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Frey*, 73 M.J. at 248 (quotation marks and citation omitted). As with findings argument, "trial counsel is at liberty to strike hard, but not foul, blows" during sentencing argument. *Halpin*, 71 M.J. at 479 (quotation marks and citation omitted). "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial." *Baer*, 53 M.J. at 238. "The focus of our inquiry should not be on words

in isolation, but on the argument as viewed in context." *Id.* (quotation marks and citations omitted).

The impact of the creation of child pornography can be admissible in sentencing for the offense of possession of child pornography. *United States v. Miles*, 71 M.J. 671, 675–76 (N.M. Ct. Crim. App. 2012) (citations omitted).

Child pornography is "a permanent record of the depicted child's abuse, and the harm to the child is exacerbated by [its] circulation." *Paroline v. United States*, 572 U.S. 434, 440 (2014) (alteration in original) (internal quotation marks and citation omitted), *quoted with approval in United States v. Barker*, 77 M.J. 377, 381 (C.A.A.F. 2018).

**3. Analysis**

Because there was no objection during circuit trial counsel's sentencing argument, we analyze this issue under a plain error standard of review. After closely examining circuit trial counsel's sentencing argument in its entirety, we find Appellant has failed to establish any error, let alone plain or obvious error.

Appellant claims trial counsel's argument was improper sentencing argument. Specifically, Appellant directs us to that part of trial counsel's argument which states, "Think about that, a prepubescent child who has not gone through puberty is being assaulted by a fully pubescent grown man and what that would've done." To the extent Appellant argues the violence towards the victim in the creation of the child pornography is not a permissible aggravating factor in sentencing for possession and solicitation of child pornography, we disagree. We agree with our sister court that "the violent nature of the pictures the appellant possessed is proper aggravation" and the impact of the creation of child pornography can be admissible in sentencing for child pornography cases. *Miles*, 71 M.J. at 675–76. Furthermore, in Appellant's case, the circuit trial counsel reiterated what was presented as evidence, in the photographs related to Appellant's guilty plea to possession of child pornography.

Considering circuit trial counsel's entire sentencing argument, we find trial counsel argued Appellant was exploiting the children in the images through his possession and solicitation of images of this specific type of abuse.[13] Therefore, we do not find this to be improper argument.

---

[13] *See, e.g.*, *Paroline*, 572 U.S. at 436 ("The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the [child] victim's abuse . . . plays a part in sustaining and aggravating this tragedy."); *Barker*, 77 M.J. at 381 (finding those who possess and distribute child pornography directly contribute to the child's

We are confident that Appellant was sentenced based on the evidence alone. *See Halpin*, 71 M.J. at 480. Accordingly, we find Appellant is not entitled to relief on this issue.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Article 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).[14] Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

continuing victimization); *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007) (recognizing that even those who "'merely' or 'passively' receive or possess child pornography directly contribute to [the child's] continuing victimization").

[14] In a footnote in his brief to this court, Appellant notes two items in the record of trial appear to be missing: (1) the memorandum which detailed Judge Percle as military judge for Appellant's court-martial and (2) the receipt demonstrating delivery of the record of trial to Appellant. However, Appellant states in his brief that "[he] does not assert these omissions are substantial or cause the record to be incomplete." We find these omissions do not require corrective action.